DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

KEVIN PATRICK DONAHUE,

Appellant,

v.

BRITTANY CHARLETON DONAHUE,

Appellee.

No. 2D2023-1883

_____

November 15, 2024

Appeal from the Circuit Court for Pasco County; Brian Gnage, Judge.

Mark F. Baseman of Felix, Felix & Baseman, Tampa, for Appellant.

Carla M. Sabbagh and Gregory D. Jones of Rywant, Alvarez, Jones,
Russo & Guyton, P.A., Tampa, for Appellee.

KHOUZAM, Judge.

Kevin Patrick Donahue, the Former Husband, appeals the amended
final judgment dissolving his marriage to Brittany Charleton Donahue,
the Former Wife. Because the court erred in valuing several assets
included in the equitable distribution scheme, we reverse and remand for
the court to reconsider these findings and revisit the equitable
distribution scheme accordingly. As to the remaining issues, we affirm.

The parties were married on August 15, 2015, and separated in April 2021. The Former Husband filed a petition for dissolution on May 28, 2021. On appeal, the Former Husband challenges the valuation of several assets in the equitable distribution scheme, including the marital home, several retirement accounts, the Former Husband's business, and the Former Husband's postfiling earnings from the business. We address each in turn.

"We review de novo the characterization of an asset as marital or nonmarital," but "[c]ompetent, substantial evidence must support the trial court's valuation of the asset." *Tradler v. Tradler*, 100 So. 3d 735, 738 (Fla. 2d DCA 2012). "The standard of review for a trial court's selection of a valuation date for a marital asset is abuse of discretion." *Leonardis v. Leonardis*, 30 So. 3d 568, 571 (Fla. 4th DCA 2010).

## I. The Marital Home

The Former Husband argues that the court abused its discretion by valuing the marital home as of the date of filing instead of the date of the final hearing where there was uncontroverted evidence presented that the value of the home had passively—and substantially—appreciated during the pendency of the proceedings. We agree. The record shows that the value of the house had increased from $320,000 on the date of filing to at least $450,000 by the date of the final hearing. There was no evidence presented that this increase was the result of either party's active efforts.

"Normally, '[w]hen marital assets have appreciated passively since the filing date, the date of the final hearing generally should be used.' " *Reese v. Reese*, 363 So. 3d 1202, 1208 (Fla. 6th DCA 2023) (alteration in original) (quoting *Erdman v. Erdman*, 301 So. 3d 316, 319 (Fla. 5th DCA 2019)). But here, the court used the value of the home as of the filing

date without explaining its reasoning for applying an exception to the general rule; nor is such an explanation readily discernable from the record. Accordingly, we reverse and remand for the trial court to reconsider its valuation of the marital home.

## II. The Former Husband's Retirement Accounts

The Former Husband challenges the court's valuation of his retirement accounts on several grounds. First, he argues that the court abused its discretion in valuing his Roth IRA as of the date of filing where it had significantly declined by the time of trial. The Former Wife concedes that the trial court made no findings regarding the reduced value of the Roth IRA, and it is generally error to include in the equitable distribution scheme assets that have been diminished or depleted during the dissolution proceedings without an explicit finding of misconduct. *See Tradler*, 100 So. 3d at 740-41. Accordingly, we reverse and remand for the court to reconsider its valuation of the Roth IRA.

The Former Husband also argues that the court erred by ignoring evidence that two of his TD Ameritrade retirement accounts contained nonmarital components. The court specifically found that there was "no testimonial evidence" to support the premarital amounts advocated by the Former Husband. But the record contradicts that finding; the Former Husband <u>did</u> testify to the premarital balances in these accounts and presented documentary evidence in support of his testimony. The court should have at least considered this evidence, as the Former Husband was entitled to the premarital portions of his accounts. *See Neiditch v. Neiditch*, 187 So. 3d 374, 375 (Fla. 5th DCA 2016) ("[T]he 'party owning the pension is entitled to the premarital value of the fund, along with its subsequent passive appreciation, not attributable to the marriage.' " (quoting *Scott v. Scott*, 888 So. 2d 81, 83 (Fla. 1st DCA

2004))). We reverse and remand for the court to consider this evidence and revisit its findings accordingly.

Next, the Former Husband argues that the court erred by ignoring the tax consequences associated with its award of retirement assets. It is true "that a trial court should ordinarily consider income tax consequences in the evaluation of marital assets, [but] we also recognize that 'a trial court cannot be faulted for not considering the tax consequences if counsel for the parties neglect to present evidence on the subject.'" *Kadanec v. Kadanec*, 765 So. 2d 884, 886 (Fla. 2d DCA 2000) (quoting *Miller v. Miller*, 625 So. 2d 1320, 1321 n.2 (Fla. 5th DCA 1993)); *see also Tradler*, 100 So. 3d at 739 ("A trial court should consider the tax consequences when valuing marital assets <u>if a party presents expert evidence on the tax consequences</u>." (emphasis added)). Here, the Former Husband "concede[s] that the record contains no expert evidence showing precisely what the tax consequences on his retirement accounts would be." Because the Former Husband failed to present evidence that would require the court to consider tax consequences, we cannot say that the court erred in failing to address them.

## III. The Former Husband's Business

The Former Husband argues that the court erroneously valued his business, Risen Son Financial, LLC, by failing to exclude the value attributable to his personal goodwill. "Personal or professional goodwill attributable to the skill, reputation, and continued participation of an individual is <u>not</u> a marital asset." *Schmidt v. Schmidt*, 120 So. 3d 31, 33 (Fla. 4th DCA 2013). In contrast, "[e]nterprise goodwill, defined as the value of a business 'which exceeds its tangible assets' and represents 'the tendency of clients/patients to return to and recommend the practice irrespective of the reputation of the individual practitioner,' is a marital

4

asset subject to equitable distribution." *Id.* (quoting *Thompson v. Thompson*, 576 So. 2d 267, 269 (Fla. 1991)).

Here, the court appropriately determined that the value of the business was attributable to enterprise goodwill as opposed to personal goodwill because the Former Husband failed to show that the business depended on his own personal skill, reputation, or continued participation. By his own testimony, the Former Husband took over the book of business for Risen Son without specialized training from the former owner, and the value of the business did not decrease with the former owner's departure. In other words, the value followed the book of business itself and was not dependent on the identity of the owner. Although the Former Husband makes much of the existence of a noncompete agreement, the agreement alone does not transform the entire nature of the business, particularly where such a finding would be contrary to the Former Husband's own testimony about his role. Accordingly, we conclude that the court's valuation of Risen Son was supported by competent, substantial evidence.

### IV. The Former Husband's Postfiling Earnings

Finally, the Former Husband argues that the court erred by including his postfiling earnings as a marital asset in the equitable distribution scheme and crediting him with dissipated funds without a finding of misconduct. Specifically, the Former Husband points to the court's findings that he had received—and spent—distributions from Risen Son during the pendency of the proceedings. It appears that the court correctly distinguished between the Former Husband's salary and profit distributions from the business, which it found to be a marital asset as already discussed. However, the court erred in attributing the dissipated assets to the Former Husband without any finding of

5

misconduct.  *See Tradler*, 100 So. 3d at 740-41.  Accordingly, we reverse and remand for the court to reconsider its valuation of the postfiling earnings.

On remand, the court shall reconsider each of the erroneous findings identified in this opinion and revisit the equitable distribution scheme in light of its new findings.  If necessary, the court may take additional evidence on remand.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

SLEET, C.J., and ROTHSTEIN-YOUAKIM, J., Concur.

—————————————

Opinion subject to revision prior to official publication.